UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



---

JOSEPH A. HARRIS,
        Plaintiff,

v.

LIVINGSTON COUNTY, et al.,
        Defendants.

**DECISION & ORDER**
14-cv-6260-DGL-JWF

---

## Background

Plaintiff Joseph A. Harris ("plaintiff") filed this action pro se seeking relief under 42 U.S.C. § 1983 for various alleged violations of his civil rights by employees of the Livingston County Sherriff's Department and the Livingston County Jail ("defendants"), where he was formerly incarcerated. See Docket # 1. Presently before the Court are defendants' motions for a protective order (Docket # 60) and to compel discovery or strike the third amended complaint (Docket # 67) and plaintiff's motion for appointment of counsel (Docket # 69).

For the reasons that follow, defendants' motion for a protective order (Docket # 60) is **granted** insofar as plaintiff is prohibited from disclosing any discovery he receives in this litigation related to: (1) prior complaints; (2) video surveillance; and (3) non-party inmate grievances. Defendants' motion for a protective order is **denied** in all other respects. Defendants' motion to compel and strike (Docket # 67) is **granted**

1

insofar as defendants seek to compel production of requested documents and authorizations but is **denied without prejudice** insofar as defendants seek to strike the complaint. Plaintiff's motion for appointment of counsel (Docket # 69) is **denied**.

## Discussion

<u>Motion for Protective Order (Docket # 60)</u>: Defendants filed their motion for a protective order pursuant to Fed. R. Civ. P. 26(c), filed on July 6, 2018, requesting that plaintiff be prohibited from publishing, sharing, or disclosing any materials disclosed by defendants in this action. Docket # 50, at 2. Defendants contend that plaintiff has a history of publishing information related to this case on his Facebook account and that his posts make clear that he intends to continue sharing information on social media and elsewhere. Plaintiff responded on July 25, 2018, arguing that he has a First Amendment right to speak about his case on social media. Docket # 63. The Court set the motion down for oral argument on August 21, 2018, but plaintiff requested an adjournment to September 5, 2018. <u>See</u> Docket # 64. Plaintiff then requested a second adjournment to November 6, 2018. <u>See</u> Docket # 65. The Court held oral argument on November 6, but plaintiff did not appear.

A court may, upon a showing of good cause, issue a protective order to shield a party or person from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

2

Because a trial court is in the best position to weigh the competing interests of the parties, the Court has broad discretion to determine when a protective order is necessary. See Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984). Despite this broad discretion, however, a court may not enter a protective order absent a showing of good cause by the moving party. See In re Agent Orange Prod. Liab. Litig., 821 F.2d 139, 145 (1987) ("[I]f good cause is not shown, the discovery materials in question should not receive judicial protection and therefore would be open to the public for inspection.").

Generally, good cause exists "when a party shows that disclosure will result in a clearly defined, specific and serious injury." In re Terrorist Attacks on September 11, 2001, 454 F.Supp.2d 220, 222 (S.D.N.Y. 2006) (quoting Shingara v. Skiles, 420 F.3d 301, 306 (3d Cir.2005)); see also Allen v. City of New York, 420 F. Supp. 2d 295, 302 (S.D.N.Y. 2006) ("[A] party can show good cause for protection of a document under Fed. R. Civ. P. 26(c) if it demonstrates a clearly defined and serious injury that would result from disclosure of the document.") (internal quotation marks omitted). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test. Moreover, the harm must be significant, not a mere trifle." Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986) (internal citations omitted);

3

see also Flaherty v. Seroussi, 209 F.R.D. 295, 299 (N.D.N.Y. 2001) ("The mere fact that some level of discomfort, or even embarrassment, may result . . . is not in and of itself sufficient to establish good cause to support the issuance of protective order. To rise to a level of good cause, any such embarrassment must be substantial.").

In determining whether to grant a protective order, a court should weigh the privacy rights of the parties against the general public's interest in the information at issue. See Dorsett v. County of Nassau, 762 F. Supp. 2d 500, 514-15 (E.D.N.Y. 2011); In re Zyprexa Injunction, 474 F. Supp. 2d 385, 415 (E.D.N.Y. 2007). There is no public right of access to materials produced during the initial stages of discovery. Terrorist Attacks, 454 F. Supp. 2d at 222; see also United States v. Amodeo, 71 F.3d 1044, 1050 (2d Cir. 1995) ("Documents that play no role in the performance of Article III functions, such as those passed between the parties in discovery, lie entirely beyond [the reach of the presumption of public access] . . . ."). Nevertheless, parties are free to disseminate discovery materials that are not placed under a protective order as they see fit. See Agent Orange, 821 F.2d at 145; Schiller v. City of New York, No. 04 Civ. 7922 KMK JCF, 04 Civ. 7921 KMK JCF, 2007 WL 136149, at *2 (S.D.N.Y. Jan. 19, 2007).

Here, defendants request a protective order for all materials they produce to plaintiff in this action based on plaintiff's

4

proclivities for posting on social media. More specifically, they request a protective order for the prior complaints, non-party inmate grievances, and video surveillance footage from the Livingston County Jail. There is good cause for the issuance of a protective order for defendants' specific requests, but not for a generalized blanket protective order.

1. Prior Complaints, Grievances from Non-Party Inmates, and Video Surveillance: Defendants contend that that inmate complaints, grievances, and medical information should be subject to a protective order because that material raises confidentiality concerns for prison staff or other inmates. I agree.

New York Civil Rights Law § 50-a provides, in relevant part, that "[a]ll personnel records used to evaluate performance toward continued employment or promotion . . . under the control of a sheriff's department or a department of correction of individuals employed as correction officers" must be kept confidential and protected from investigation absent the officer's consent or a court order. N.Y. Civ. Rights Law § 50-a (McKinney 2014). The complaints at issue here contain confidential personnel information that is covered by this statute. See Redd v. City of Rochester, No. 15-cv-6049, 2016 WL 4702831, at *1 (W.D.N.Y. Sep't 7, 2016) (requiring plaintiff to sign confidentiality order before receiving personnel files). Similarly, the grievances filed by other inmates contain the confidential medical information of

5

those non-party inmates and therefore that information should be subject to the protective order as well. There is no reason why such confidential medical information about an inmate who is not a party to this action should be disseminated to anyone beyond the parties in this litigation.

Likewise, defendants urge that video surveillance footage from the prison should also be subject to a protective order because it depicts "the manner in which officers responded to the incidents at issue and the techniques used to gain control of [p]laintiff" (Docket # 60-3, at 3) and this information "could be used by inmates to create a disturbance or uprising, or attempt to escape" (Docket # 60-5, at 5). Again, I agree.

Second Circuit case law concerning the protection of jail security footage is surprisingly scant. Nevertheless, in McMillen v. Windham, the United States District Court for the Western District of Kentucky granted a protective order with respect to video surveillance footage from a detention center. McMillen v. Windham, No. 3:16-CV-558-CRS, 2018 WL 652829, at *5 (W.D. Ky. Jan. 31, 2018). The court, conducting its own review of out-of-circuit case law, found support for the movant's argument that the detention center's safety concerns constituted sufficient good cause for the issuance of a protective order. Id. at *3–*4. "The Court is persuaded that to allow the production, dissemination, and use of the Lincoln Village video footage to be unrestricted

could create security and safety risks to the current staff of that facility and to the public." Id. at *4. Accordingly, the court entered a protective order limiting the usage of the footage for the purposes of the litigation at hand. Id. at *5.[1]

This reasoning is persuasive. Defendants assert that allowing the dissemination of the video surveillance footage would put at risk the safety of corrections officers, other inmates, and the public. Like in McMillen, the court finds that there is good cause for a protective order preventing plaintiff disseminating the surveillance footage.

2. Blanket Protective Order: In addition to the prior complaints and video surveillance footage, the Court's June 6 Order requires defendants to produce the following: booking reports for the incidents in question; photographs of plaintiff from one of the incidents; copies of any mail received by the Livingston County Sherriff's Department regarding the incidents; and any reports made by the Inspector General regarding the incidents. Docket # 58, at 3. None of these materials would, on their face, appear to be particularly confidential or sensitive from the perspective of the defendants. Nor have defendants identified any clearly defined, serious injury that would result from plaintiff's

---

[1] Notably, the facility at issue in McMillen was no longer being used as a detention center at the time of the court's ruling. Nevertheless, the court expressed concern as to "the possible repercussions for the safety of facility staff, potential future detainees, and the public" if it were to allow free disclosure of the security footage. McMillen, 2018 WL 652829, at *4.

7

dissemination of these materials. See Terrorist Attacks, 454 F. Supp. 2d at 222. As the moving party, the burden of establishing good cause for the issuance of a protective order is on the defendants. See Agent Orange, 821 F.3d at 145. Because they have not made any particularized showing of harm with respect to the other materials they have been asked or ordered to produce, defendants have failed to establish good cause for the blanket protective order they request. See Kelly v. City of New York, No. 01 CIV. 8906 (AGSDF), 2003 WL 548400, at *5 (S.D.N.Y. Feb. 24, 2003) (noting that the court was "not convinced that such an order should provide blanket coverage for virtually all produced documents" and finding that "the course that would best protect non-parties from embarrassment or oppression, while still affording the press a reasonable opportunity to obtain relevant information about the conduct of a City investigation, would appear to be a middle course between unfettered disclosure and a complete prohibition on disclosure").

Motion to Compel and to Strike (Docket # 67): After plaintiff failed to appear for oral argument on the motion for a protective order, defendants moved to strike plaintiff's third amended complaint or, in the alternative, to compel plaintiff to produce records and authorizations defendants requested and that the Court previously ordered produced. Docket # 67; see Docket # 58. Again,

8

plaintiff has not responded and has not produced the materials requested and so ordered by this Court.

According to the Court's review of the docket, it appears that plaintiff has refused to comply with the Court's order of June 7, 2018. Under Federal Rule of Civil Procedure 37(b)(2), the Court may strike the pleadings and dismiss the case where, as here, a party fails to comply with a Court's discovery order. However, given that plaintiff recently filed some unrelated documents, the Court will give the plaintiff one more chance to provide defendants with the following information - previously ordered produced - by January 7, 2019:

1. Names and addresses of any witness to any incident alleged in plaintiff's third amended complaint;
2. Copies of each grievance and/or complaint submitted by him to Livingston County Jail in relation to the incidents alleged in the third amended complaint and copies of prison policies in his possession relevant to the grievance procedure upon which he is relying;
3. Executed HIPAA authorization forms provided to him by defendants;
4. Copies of any documents he intends to introduce at deposition or trial;

5. Copies of photographs of his alleged injuries made contemporaneously with the incidents alleged in the third amended complaint;

6. Plaintiff's diary of the alleged incidents, and in the event defendants request to obtain copies of the diary or any of its entries, plaintiff shall provide defendant with an opportunity to copy such entries.

If plaintiff does not produce the aforementioned records and authorizations by January 7, 2019, the Court will entertain another motion by defendants to strike the third amended complaint and dismiss the case.

Motion for Appointment of Counsel (Docket # 69): Indigent civil litigants, unlike criminal defendants, do not have a constitutional right to counsel. See Burgos v. Hopkins, 14 F.3d 787, 789 (2d Cir. 1994). Nevertheless, a court has the discretion to appoint counsel to represent indigent litigants pursuant to 28 U.S.C. § 1915(e) when the facts of the case warrant it. Sears, Roebuck & Co. v. Charles W Sears Real Estate, Inc., 865 F.2d 22, 23 (2d Cir. 1988); see also In re Martin-Trigona, 737 F.2d 1254, 1260 (2d Cir. 1984). The Second Circuit set forth the factors to be considered in deciding whether or not to assign counsel in Hodge v. Police Officers:

> [T]he district judge should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the

> court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues, and any special reason in the case why appointment of counsel would be more likely to lead to a just determination.

802 F.2d 58, 61-62 (2d Cir. 1986).

In applying the Hodge factors, I believe plaintiff's allegations satisfy the initial threshold showing of merit. Compare McKenna v. Wright, No. 01 Civ. 6571, 2003 WL 302225 (S.D.N.Y. Feb. 11, 2003) (finding that plaintiff demonstrated that claim that he received inadequate medical need was "of substance" and that, ultimately, appointment of counsel was warranted), with Crawford v. Johnson, 9 F. Supp. 2d 222, 224 (W.D.N.Y. 1998) (holding that plaintiff did not sufficiently establish objective and subjective prongs of deliberate indifference standard when plaintiff claimed medical staff failed to properly diagnose plaintiff). However, after reviewing the complaint and considering the nature of the factual and legal issues involved, as well as plaintiff's ability to present his claims, I conclude that appointment of counsel is not warranted at this particular time.

"Volunteer lawyer time is a precious commodity" that "should not be allocated arbitrarily." Cooper v. A. Sargenti Co., 877 F.2d 170, 172 (2d Cir. 1989). Here, plaintiff's pro se complaint

is detailed in nature and adequately describes the events that allegedly led to his injuries. The factual circumstances surrounding plaintiff's claims do not appear to be unusually complicated and the legal issues alleged are not so complex as to make it impossible for plaintiff to proceed without counsel.

Accordingly, at this juncture at least, plaintiff appears sufficiently knowledgeable and equipped to understand and handle the litigation. See Castro v. Manhattan E. Suite Hotel, 279 F. Supp. 2d 356, 358 (S.D.N.Y. 2003) (denying appointment of counsel where "the case does not present novel or overly complex legal issues, and there is no indication that [plaintiff] lacks the ability to present his case"). Given the limited resources available with respect to pro bono counsel, the Court finds no "special reason" why appointment of counsel now would be more likely to lead to a just determination. See Boomer v. Deperio, No. 03 CV 6348L, 2005 WL 15451, at *1-2 (W.D.N.Y. Jan. 3, 2005) (denying motion to appoint counsel despite plaintiff's claims that the matter was complex and he had a limited knowledge of law); Harris v. McGinnis, No. 02 CV 6481, 2003 WL 21108370, at *2 (S.D.N.Y. May 14, 2003) (denying motion for appointment of counsel where plaintiff "offered no special reason why appointment of counsel would increase the likelihood of a just determination"). Balancing the factors set forth in Cooper, the Court finds that

appointing counsel is inappropriate at this time. Plaintiff's motion to appoint counsel (Docket # 69) is therefore **denied**.

## Conclusion

For the foregoing reasons, defendants' motion for a protective order (Docket # 60) is **granted in part** and **denied in part**. The Court declines to issue a blanket protective order. However, plaintiff is prohibited from publishing, sharing, or disclosing to anyone any material or information he receives from defendants related to: (1) prior complaints; (2) video surveillance; and (3) non-party inmate grievances.

Defendants' motion to strike the third amended complaint is **denied without prejudice** but their motion to compel is **granted** (Docket # 67). Plaintiff is directed to produce the above records and authorizations by January 7, 2019. His failure to comply with the Court's Decision and Order may result in dismissal of this case.

Finally, plaintiff's motion for appointment of counsel (Docket # 69) is **denied**.

**SO ORDERED.**

													_____
													JONATHAN W. FELDMAN
													United States Magistrate Judge

Dated:	December 13, 2018
		Rochester, New York